UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

LONNY L. MARTIN,

      Plaintiff,

        v.

PATRIOT SUBARU OF SACO, INC.,

      Defendant.

Civil Action No.

## COMPLAINT
## JURY TRIAL REQUESTED
## INJUNCTIVE RELIEF REQUESTED

NOW COMES the Plaintiff, Lonny L. Martin ("Martin" or "Plaintiff"), by and through undersigned counsel, and complains against the Defendant, Patriot Subaru of Saco, Inc. ("Defendant" or "Patriot Subaru"), as follows:

JURISDICATION AND PARTIES

1.      This action arises under the Maine Human Rights Act ("MHRA"), 5 M.R.S. §§ 4551 et seq., the Maine Family Medical Leave Requirements Act ("MFMLR"), 26 M.R.S. §§ 843 *et seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq*., and the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq.*

2.      Plaintiff is a United States citizen residing in Scarborough, Maine.

3.      Patriot Subaru is a Maine corporation that operates a car dealership in Saco, Maine.

4.      Patriot Subaru had 50 or more employees for each working day in each of 20 or more calendar weeks in the same calendar year as when the alleged discrimination occurred.

5.      Patriot Subaru employed 15 or more employees in Plaintiff's workplace (Saco car dealership) at all times material to this case.

6.      This Court has subject matter jurisdiction over Plaintiff's federal and state claims pursuant to 28 U.S.C. §§ 1331and 1367.

7.      On or about October 20, 2014, Plaintiff filed a timely Charge/Complaint of Discrimination against Patriot Subaru alleging unlawful disability discrimination with the Maine Human Rights Commission ("MHRC") and Equal Employment Opportunity Commission ("EEOC").

8.      On or about May 8, 2015, the MHRC issued a Notice of Right to Sue with respect to Plaintiff's MHRA claims.

9.      On or about May 4, 2015, the EEOC issued a Notice of Right to Sue with respect to Plaintiff's ADA claims.

10.     Plaintiff has exhausted his administrative remedies with respect to all claims under the MHRC and ADA set forth in this Complaint.

11.     Plaintiff's claims under the FMLA and FMLR do not require administrative exhaustion.

<u>JURY TRIAL DEMAND</u>

12.     Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a jury trial on all issues triable of right by jury

<u>FACTUAL ALLEGATIONS</u>

13.     Martin was employed as a Sales Manager by Patriot Subaru on and off for about ten years.

14.     Martin's job performance was satisfactory.

15.     Martin was qualified to perform the job of Sales Manager.

16.     Adam Arens is the owner and president of Patriot Subaru.

17.     Brian Beattie is the General Manager of Patriot Subaru.

18.     Patricia Berryman is the Comptroller of Patriot Subaru.

19.     On about July 28, 2014, Martin was rushed to Maine Medical Center by ambulance with a severe headache. He was treated in the emergency room and released.

20.     On July 29, 2014, Martin saw a colleague of his treating physician. Martin was diagnosed with a disorder called Chronic Complicated Migraines. Martin was advised to take two weeks off from work to get rest and recover.

21.     On August 12, 2014, Martin was seen and treated by his treating physician, Mary Connolly, MD and released to return to work.

22.     Between July 28 and August 12, 2014, Martin received continuing treatment for Chronic Complicated Migraines under the supervision of medical professionals.

23.     On July 29, 2014, Martin wrote an email to Beattie with an update on his headache. Martin informed Beattie that he (Martin) was diagnosed with a disorder called Chronic Complicated Migraines.

24.     Martin told Beattie that Martin's brain was not working properly and that Martin was taking medication that would control but not cure the problem.

25.     Martin sent Beattie a letter from Martin's doctor excusing Martin from work for two weeks as an email attachment.

26.     On August 9, 2014, Martin wrote an email to Beattie with another update on Martin's headaches and Martin's expected return to work date.

3

27.     On August 12, 2014, Martin's doctor wrote a note stating that Martin was ready to return to work on August 13, 2014 with the limitation that if Martin had a headache Martin would need to leave work. Martin's doctor faxed the note to Patriot Subaru.

28.     Martin's doctor also completed FMLA paperwork and sent it to Patriot Subaru.

29.     The FMLA paperwork indicated that Martin's headaches would probably last a lifetime with episodic flare-ups and that when Martin's headaches are symptomatic, Martin would not be able to perform Martin's job duties.

30.     Martin's doctor wrote that she anticipated that Martin would experience flare-ups one or two times a month, and that the flare-ups would last one to two days.

31.     On August 13, 2014, Martin arrived at work at 11:00 AM, which is Martin's scheduled starting time.

32.     Martin noticed that his desk looked different.

33.     Before Martin was able to set his things down, Beattie called him in to a meeting. Berryman was also present.

34.     Beattie and Berryman told Martin that they were putting Martin back on the sales floor.

35.     Beattie and Berryman said it was in the "best interest" of the dealership that Martin work in sales and not as the sales manager, the position Martin always held while working for Patriot Subaru.

36.     Martin asked Beattie to put the demotion in writing and received an email, copied to Arens and Berryman, which read: "Lonny Martin is moving into the sales department which is in the best interest for Patriot Subaru."

37.     Arens replied to all, "Awesome, welcome back Lonny!"

4

38.     Martin replied to Arens only that Martin did not belong at the dealership as a salesperson and rather belonged on the management team and that it seemed to Martin that he was being punished for being sick.

39.     Arens responded, "Definitely not being punished, we have to make sure you are healthy and stress free, can't let you put yourself back to where you were."

40.     Martin replied, "I am getting better and the doctor will say the same. I am much better off on the desk [i.e., as sales manager] and that is where I want to be." Martin also wrote, "I can't start off on the floor and make the money that I need to."

41.     A couple of minutes later, Martin wrote an email to Beattie asking him to reconsider having Martin on the floor. Martin wrote, "I am a great manager and I just freed up a lot of my time so I can be the manager that Patriots is looking for."

42.     Several hours later, Beattie responded, "Lonny, I appreciate your enthusiasm however the best interest for Patriot Subaru is to have you working on the sales floor."

43.     Although the demotion was a substantial blow to Martin financially and emotionally, Martin was not able to convince Arens or Beattie to reverse the demotion.

44.     To avoid conflict, Martin responded to Beattie in a positive tone: "Thank you and I now agree with you 100%. It was nice to sell a car an (sic) make money and then go home. I WILL BE FINE."

45.     As a Sales Manager, Martin was receiving $2,000 a week plus bonus.

46.     Last year Martin made approximately $192,000.

47.     As a sales person, Martin anticipated that his pay would be drastically reduced. Martin had no clients and was faced with the prospect of starting fresh on the sales floor.

48.     Upon information and belief, the most successful sales people at Patriot Subaru made about $110,000 per year in the last few years.

49.     On about August 28, 2014, after consulting with an attorney, Martin sent an email to Mr. Beattie that reads:

> "I have given a lot of thought to my recent demotion from sales manager to salesperson at Patriot Subaru. I have done some research and **I believe that you violated my rights** under the family medical leave act and the anti-discrimination laws when you demoted me while I was out on a medical leave for my serious migraines. I believe that I should have been allowed to return to my sales manager job when I returned from the medical leave. I have attached a letter from my doctor to this email. She states that I am recovered and that I am medically able to work in my former sales manager's position. I also believe that I should get back wages and bonuses for this whole month due to this error. **Once again I have to say that I have did nothing wrong and I should not be punished for being sick!!!!!!**

> "I am able to return to my sales manager job and would like to be returned at this time. Let me know. Thank you."

50.     Patriot Subaru refused to reinstate Martin as Sales Manager and did not deny that Martin was demoted because of his migraine disorder or because Martin requested and needed a medical leave of absence for his migraine disorder.

51.     On September 8, 2014, Martin resigned due to Patriot Subaru's disability discrimination and retaliation for Martin's request and need for reasonable accommodations.

52.     On or about September 10, 2014, Plaintiff's attorney sent Patriot Subaru a letter asking the company to preserve information concerning Martin. The letter also specifically requested paper documents, digital or electronic files or any other electronic/digital data such as text messages, voice mail and other data generated by or stored on computers or storage media pertaining to Plaintiff's demotion, as well as information about the performance of the sales department and business over the last five years.

53.     Patriot Subaru responded through counsel in a letter dated September 23, 2014. Patriot Subaru produced no documents showing that the decision to demote Plaintiff was made prior to Plaintiff's diagnosis with Chronic Complicated Migraines or prior to Plaintiff's request for a medical leave of absence to accommodate his migraine disorder.

54.     In response to the MHRC Complaint/EEOC Charge of Discrimination, Patriot Subaru raised multiple defenses to Plaintiff's discrimination and retaliation claims.

Defense #1 – Decision to demote allegedly made prior to knowledge of disability

55.     Patriot Subaru claimed that three emails written by Arens and Beattie on March 11, April 3 and June 21, 2014 are proof that the decision to demote Martin was before Defendant became aware that Martin had a disabling headache condition.

56.     None of the emails say anything about demoting Martin.

57.     The emails were not written close in time to Martin's demotion.

58.     Arens characterized his own communication on June 21, 2014 as "some rambling" about half a dozen employees.

Defense #2 – Alleged poor job performance

59.     Patriot Subaru claims that Martin was demoted due to poor job performance.

60.     Patriot Subaru did not tell Martin that he was being demoted due to poor job performance.

61.     Arens told Martin that the reason for Martin's demotion was to "make sure [that he was] health and stress free…," a clear reference to Martin's Chronic Complicated Migraine disorder.

62.     In the June 21, 2014 email, Arens expressed the same concerns about another Sales Manager, Mark O'Leary, as he did about Martin.

63.     Martin was demoted; O'Leary was not.

64.     Defendant's and Subaru's records will demonstrate that Martin's job performance was satisfactory and that the dealership was profitable while he was a Sales Manager.

65.     After Martin was demoted and left Patriot Subaru, the dealership dropped from the top ten dealerships in New England to about 19th.

Defense #3 – Non-disabled employee allegedly demoted for the same reason as Martin

66.     Patriot Subaru claims that Tony Roberts was demoted to sales in August 2014 for the same reason as Martin.

67.     Roberts was a Finance Manager not a Sales Manager like Martin.

68.     Patriot Subaru has provided no documentation showing when and why the decision to demote Roberts was made.

69.     Upon information and belief, when Roberts was demoted or reassigned, Roberts left and was gone for two weeks before coming back and accepting the sales position.

Defense #4 – Alleged sales staff complaints about lack of leadership

70.     Patriot Subaru claims that Arens demoted Martin to sales on August 1, 2014 due to concerns the sales staff expressed regarding Martin's alleged lack of leadership during interviews with the sales staff on June 21, 2014.

71.     Patriot Subaru has produced no contemporaneous notes regarding the alleged interviews.

72.     Patriot Subaru has produced no documents showing that the decision to demote Martin was made on or about June 21, 2014.

73.     Arens may well have interviewed the sales staff on June 21, 2014. Martin observed Arens meeting with the sales staff as a group in his office. No managers were present. Martin observed that Arens met with some individuals one-on-one after the group meeting.

74.     After meetings with members of the sales staff, Arens came out to the desk where Martin and O'Leary were sitting and spoke to both of them.

75.     Arens asked Martin and O'Leary, "Is it Brian [Beattie] again? Is it Brian?"

76.     Martin told O'Leary, "Go ahead and tell him."

77.     When O'Leary did not respond right away, Arens asked, "What is it?"

78.     O'Leary then told Arens about Beattie being rude.

79.     Upon information and belief, Arens had many discussions with Beattie over the years about his mistreatment of staff and the negative effect it had on morale.

80.     In mid-January 2015, David Shoemaker was assigned to the sale manager position that Martin held prior to his demotion on August 1, 2014.

81.     Arens wrote that "David [Shoemaker] is lost at leadership…" in Arens's June 21, 2014 email to Beattie.

82.     In other words, Martin and the employee who replaced him in the sales manager position were both criticized by Patriot Subaru for lack of leadership.

Defense #5 – Martin was allegedly preoccupied with coaching Little League

83.     Patriot Subaru's "brand" is as a car dealership that is closely tied to the community. Its website reads, in part:

> "Patriot Subaru contributes over $100,000 per year to local community programs, charitable groups, educational and athletic organizations. In addition, our employees provide over 1000 hours of community service. It has been our commitment from the beginning, to be actively involved and supportive of the communities that have helped make us successful. . . . "

84.   Patriot Subaru paid the charter fees for Martin's son's Little League team.

85.   Arens was a Little League coach, as was Martin.

86.   Patriot Subaru states that Martin asked permission to be a Little League coach in 2013 and insinuates that Martin acted improperly by not asking permission to be a coach in 2014. The team that Martin allegedly did not ask to coach was sponsored by Patriot Subaru

87.   Patriot Subaru and Arens were fully aware of and supported Martin's active involvement with his son's Little League team.

88.   Patriot Subaru states that Martin was demoted because he "often" requested alterations in his work schedule to attend practices and games.

89.   At times Martin did ask the other Sales Manager to swap shifts and asked Beattie to reschedule his vacation days.

90.   Patriot Subaru did not tell Martin that he was being demoted due to his requests for schedule changes.

91.   Patriot Subaru did not tell Martin that he was being demoted because his allegedly preoccupation with Little League was getting in the way of him helping sales associates advance and close sales, which is untrue.

Defense #6 – Martin allegedly misrepresented his disability

92.   Patriot Subaru is apparently aware that a fact finder will not conclude that the decision to demote Martin was made prior to July 28, 2014.

93.   To guard against this outcome, Patriot Subaru has set forth alternative defenses.

94.   Patriot Subaru's first alternative defense is that Martin does not have a disabling headache condition.

95.     Patriot Subaru was aware prior to July 28, 2014 that Martin suffered from severe headaches. Arens and his wife are aware of this. There were occasions when Arens's wife said to Beattie and Arens, "He has to go home!" when she observed that Martin was in pain. Martin did actually leave work though, to avoid being reprimanded.

96.     Patriot Subaru alleges that Martin's vitals, pulse and breathing all appeared to be normal on July 28, 2014 when Martin was examined at work by Glenn Reed, a co-worker who is a volunteer EMT.

97.     Patriot Subaru also alleges that Martin asked co-workers to call an ambulance for him.

98.     The allegations in paragraphs 96 and 97 are untrue.

99.     On July 28, 2014, Martin walked out of the building at work, called his doctor's office and described his headache pain. The nurse told him to call an ambulance.

100.     Martin walked back into the dealership and co-workers, seeing that he was in distress, told him to sit down. Martin said, "I need to call my wife. Glen Reed checked Martin's pulse, became alarmed and said "No, I'm calling an ambulance."

101.     When Martin was being transported to the hospital by ambulance, his blood pressure was so elevated that the attendants called in a "Code 3" (life-threatening response, using lights and siren) out of concern that Martin was having a stroke.

102.     Martin's medical records and providers establish that Martin was diagnosed with a disabling headache condition called Chronic Complicated Migraines.

Defense #7 – Martin allegedly misrepresented his need for medical LOA

103.     Patriot Subaru's second alternative defense is that Martin misrepresented his need for a medical leave of absence and was recovered sufficiently to return to work but instead chose

to travel to the Little League championships in Rhode Island on August 2, 2014 to coach his son's baseball game.

104.    Patriot Subaru does not directly assert that Martin was demoted for these reasons because this defense is contradicted by the claim that the decision to terminate Martin was made prior to July 28, 2014.

105.    This defense has no factual or legal merit.

106.    Martin's doctor advised Martin not to work for two weeks.

107.    Martin's doctor did not advise Martin to avoid travel or not to attend his son's baseball game.

108.    Martin did not tell Patriot Subaru that he was not going to attend the Little League Championships.

109.    Martin's usual role was to co-manage his son's Little League team. Martin made all important decisions including who played and how they played.

110.    During the Championship game on August 2, Martin relinquished his duties as co-manager because of his migraine headache. Instead, Martin served as the fourth coach. Martin's main duty was to escort players off the field and back when they needed to use the bathroom. Martin managed his head pain by taking naps in the afternoon.

111.    Patriot Subaru did not ask Martin or Martin's doctor why Martin was able to travel to Rhode Island and attend the baseball game.

112.    Patriot Subaru did not tell Martin that he was demoted because he allegedly misrepresented his need for a medical leave of absence or because Martin went to the Little League championships in Rhode Island instead of reporting for work.

113.    Arens drove to the championship games in Rhode Island and observed Martin coaching his son's team.

114.    Martin did nothing to hide from Arens the fact that he (Martin) was going to the game and that he was coaching.

115.    Martin spoke to Arens in person at the game when Arens came to show his support.

116.    Martin posted information about the game on Facebook and mentioned that he (Martin) was suffering from headaches and could not sleep.

Defense #8 – Martin's accommodation request was allegedly unreasonable

117.    Finally, Patriot Subaru claims that it was legally entitled to demote Martin to sales instead of accommodating his request for periodic medical leaves of absence when he experienced headache flare-ups.

118.    Patriot Subaru has not and cannot provide any actual proof that Martin's proposed accommodation would cause an "undue hardship," meaning an action requiring undue financial or administrative hardship.

119.    Patriot Subaru did not tell Martin that he was being demoted because his accommodation request was unreasonable or an undue hardship.

120.    If Patriot Subaru had told Martin that his request was problematic, they could have engaged in the interactive process to arrive at a mutually acceptable solution.

Summary

121.    Plaintiff's Chronic Complicated Migraine disorder constitutes a disability as defined by the MHRA and ADA. Plaintiff's condition substantially limits major life activities

13

when viewed in its unmitigated state including concentration and working and significantly impairs his health.

122.    Defendant regarded Plaintiff's Chronic Complicated Migraine disorder as a disability and as an impairment.

123.    Plaintiff's Chronic Complicated Migraine disorder is a serious health condition under the FMLA and MFMLR.

124.    Plaintiff's Chronic Complicated Migraine disorder also constitutes a chronic condition as defined by the FMLA and MFMLR insofar as it has required periodic visits for treatment by a health care provider and have continued over an extended period of time, and cause episodic periods of incapacity.

125.    Plaintiff's request and need for time off from work from July 28 to August 12, 2014 was a request for reasonable accommodation under the MHRA and ADA and a protected medical leave of absence under the MFMLR and FMLA.

126.    Plaintiff's request for future intermittent medical leaves of absence for his anticipated episodic flare-ups of his Chronic Complicated Migraines disorder was a request for reasonable accommodation under the MHRA and ADA and protected leave under the MFMLR and FMLA.

127.    Patriot Subaru demoted Plaintiff while he was out of work on a protected leave and failed to return him to his position after he was cleared by his physician to return. Patriot Subaru's failure to return Plaintiff to his position upon his return from medical leave violates Plaintiff's prescriptive rights under the FMLA and MFMLR.

128.    Patriot Subaru's demotion of Plaintiff while he was out of work on leave constitutes a failure to accommodate Plaintiff's disability.

129.     Patriot Subaru violated the MHRA, MFMLR, ADA, and FMLA by demoting Plaintiff because of his use of protected leave.

130.     Patriot Subaru violated the MHRA and ADA by demoting Plaintiff because of his disability and because Patriot Subaru regarded Plaintiff as a person with a disability.

131.     Patriot Subaru violated the MHRA, ADA, FMLA and MFMLR by denying Plaintiff a medical leave of absence, denying Plaintiff future intermittent medical leaves of absence, retaliating against Plaintiff for requesting and needing medical leaves of absence, and subjecting Plaintiff to constructive discharge.

## COUNT I: MHRA

## UNLAWFUL DISCRIMINATION

132.     Paragraphs 1-131 are incorporated by reference.

133.     Patriot Subaru's conduct constitutes unlawful disability discrimination against Plaintiff in violation of the MHRA.

## COUNT II: MHRA

## FAILURE TO ACCOMMODATE

134.     Paragraphs 1-133 are incorporated by reference.

135.     Patriot Subaru violated the MHRA by failing to provide Plaintiff with reasonable accommodations for his disability.

## COUNT III: MHRA

## UNLAWFUL RETALIATION

136.     Paragraphs 1-135 are incorporated by reference.

137.     Patriot Subaru violated the MHRA by retaliating against Plaintiff because he requested and needed reasonable accommodations for his disability.

COUNT IV: ADA

UNLAWFUL DISCRIMINATION

138.   Paragraphs 1-137 are incorporated by reference.

139.   Patriot Subaru's conduct constitutes unlawful disability discrimination against Plaintiff in violation of the ADA.

COUNT V: ADA

FAILURE TO ACCOMMODATE

140.   Paragraphs 1-139 are incorporated by reference.

141.   Patriot Subaru violated the ADA by failing to provide Plaintiff with reasonable accommodations for his disability.

COUNT VI: ADA

UNLAWFUL RETALIATION

142.   Paragraphs 1-141 are incorporated by reference.

143.   Patriot Subaru violated the ADA by retaliating against Plaintiff because he requested and needed reasonable accommodations for his disability.

COUNT VII: MFMLR

144.   Paragraphs 1-143 are incorporated by reference.

145.   Patriot Subaru violated Plaintiff's prescriptive and proscriptive rights under the MFMLR.

COUNTY VIII: FMLA

146.   Paragraphs 1-145 are incorporated by reference.

147.   Patriot Subaru violated Plaintiff's prescriptive and proscriptive rights under the FMLA.

PRAYER FOR RELIEF

Plaintiff respectfully requests that the Court grant the following relief:

(a)     Declare the conduct engaged in by Defendant to be in violation of his rights;

(b)     Enjoin Defendant, its agents, successors, employees, and those acting in concert with it from continuing to violate his rights;

(c)     Order Defendant to employ him in his former position and/or front pay for future lost earnings;

(d)     Award equitable-relief for back pay, benefits and prejudgment interest;

(e)     Award compensatory damages in an amount to be determined at trial;

(f)     Award punitive damages in an amount to be determined at trial;

(g)     Award liquidated damages in an amount to be determined at trial;

(h)     Award nominal damages;

(i)     Award attorney's fees, including legal expenses, and costs;

(j)     Award prejudgment interest;

(k)     Permanently enjoin Defendant from engaging in any employment practices which discriminate on the basis of disability or use of protected medical leave;

(l)     Require that Defendant mail a letter to all employees notifying them of the verdict against them and stating that Defendant will not tolerate discrimination in the future;

(m)     Require that Defendant post a notice in all of its workplaces of the verdict and a copy of the Court's order for injunctive relief;

(n)     Require that Defendant train all management level employees on the protections afforded by the MHRA, ADA, FMLA and MFMLR;

17

(o)     Require that Defendant place a document in Plaintiff's personnel file which explains that Defendant unlawfully terminated him because of disability discrimination and retaliation; and

(p)     Grant to Plaintiff such other and further relief as may be just and proper.


Dated:  May 28, 2015                       /s/ Chad T. Hansen
                                           chansen@maineemployeerights.com

                                           /s/ Peter Thompson
                                           pthompson@maineemployeerights.com


                                           Attorneys for the Plaintiff

                                           MAINE EMPLOYEE RIGHTS GROUP
                                           92 Exchange Street 2nd floor
                                           Portland, Maine 04101
                                           Tel. (207) 874-0905
                                           Fax (207) 874-0343